# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JAMES HENDERSON, CAROL HENDERSON,** | ) ) ) | |
| **Plaintiffs,** | ) ) | Civil Action Number |
| **vs.** | ) ) | **5:19-cv-00436-AKK** |
| **MARK McMURRAY AND CITY OF HUNTSVILLE, ALABAMA,** | ) ) ) | |
| **Defendants.** | ) ) | |

## MEMORANDUM OPINION

James and Carol Henderson bring this action against the City of Huntsville and Mark McMurray, the Chief of the City's Police Department, asserting claims under 42 U.S.C. § 1983 for violations of their First Amendment rights to freedom of speech and freedom of religious expression.  Doc. 7.  In particular, the Hendersons challenge the City's special events ordinance and a noise provision in permits the City issued to them, claiming that both restrict their ability to peacefully protest and communicate with employees, visitors, and patients in front of two abortion clinics.  The court has for consideration the defendants' motions to dismiss.  Docs. 9 and 11.  The defendants argue that the ordinance and noise provision are reasonable and content neutral, and that the Hendersons fail to plausibly plead that the City or the Chief apply the provision and ordinance in

favor of or against a particular viewpoint, or in an otherwise unconstitutional manner.

All voices generally deserve an opportunity to be heard and debated in the public square. But, "even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1984) (quoting *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984)). By the Hendersons' own admission, the City has never denied them a permit to engage in their speech. *See* doc. 7. And, the restrictions they challenge serve the City's "strong interest in ensuring the public safety and order, in promoting the free flow of traffic on public streets and sidewalks." *Madsen v. Women's Health Center, Inc.*, 512 U.S. 753, 768 (1994). Critically, the defendants "'place[] no restrictions on either a particular viewpoint or any subject matter that may be discussed.'" *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1259 (11th Cir. 2005) (quoting *Hill v. Colorado*, 530 U.S. 703, 723 (2000)) (alteration in original omitted). While the Hendersons would prefer that the City do away with these restrictions, "the right of free exercise does not relieve an individual of the

obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Emp't Div., Dept. of Human Res. of Oregon v. Smith*, 494 U.S. 872, 879 (1990) (quotation omitted) (superseded by statute on other grounds). Therefore, in the absence of any pleaded facts showing that the defendants selectively enforce the ordinance and provision at issue to target their speech or religiously motivated conduct, the court finds that the Hendersons have failed to plausibly plead that the defendants violated their First Amendment rights by applying the content-neutral ordinance and noise provision in an unconstitutional manner. The motions to dismiss are due to be granted.

## I.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "'labels and conclusions'" or "'a formulaic recitation of the elements of a cause of action'" are insufficient. *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint

suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"
*Id.* (quoting *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. When evaluating a motion brought under Rule 12(b)(6), the court accepts "the allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). However, "[t]o survive a motion to dismiss, a complaint must . . . 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, the complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id. See also Twombly*, 550 U.S. at 555.

## II.     FACTUAL BACKGROUND[1]

The Hendersons are a married couple, pro-life advocates, and self-identified abortion counselors who have maintained a presence outside of two abortion clinics in Huntsville, Alabama for several years. Doc. 7 at 2. According to the

---

[1] The facts recited are taken from the Amended Complaint and are presumed true for purposes of this motion. *See Hunt*, 814 F.3d at 1221.

Hendersons, "they typically stand on the public sidewalk near the clinic[s] and audibly express their views, pray, and counsel to the employees, visitors, and patients who pass by." *Id.* The Hendersons allege that their typical activity is a "minor event" that, according to a City ordinance, does not require a special-events permit. *Id.*

In addition to the Hendersons, pro-choice protesters also congregate outside the clinics and seek to counter the Hendersons' speech by shouting loudly and ringing cowbells. *Id.* at 4. Allegedly, the defendants "fail to protect [the Hendersons] from this thuggery" even though the pro-choice protesters' behavior purportedly violates a City ordinance prohibiting any person from unreasonably interfering with an organized event. *Id.* The Hendersons also take issue with an alleged City policy allowing "a group to obtain a permit for traditionally protected speech on the public sidewalk and thereby exclude other groups from the same sidewalk," contending that the pro-choice protesters employ that policy to exclude them from the sidewalk outside the clinics. *Id.*

To counter the noise from the pro-choice protesters, the Hendersons employ "raised voices and sometimes amplification to make their message discernible." *Id.* at 5. And, because the use of "amplification arguably makes [their] activity a 'sound event' requiring a permit under the . . . Huntsville Code," the Hendersons obtained a renewable, six-month special events permit. *Id.* The permit allows

them to use sound amplification when necessary in accordance with certain terms, and the Hendersons have renewed this permit every six months for several years. *Id.* The permit initially limited the Hendersons' use of amplified sound to 62 decibels. *Id.* at 6. But, in 2017, the City added a provision stating that "[t]he amplified sound produced by a participant in the event shall not be plainly audible inside adjacent or nearby buildings." *Id.* The provision defines plainly audible as "amplified sound [that] can be clearly heard inside an adjacent or nearby building by a person using his normal hearing faculties, provided that person's hearing is not enhanced by any mechanical device, such as a microphone or hearing aid," and clarifies that "the particular words or phrase being produced need not be determined." *Id.* at 6-7. The Hendersons allege that Chief McMurray added the new permit provisions in his capacity as police chief. *Id.* at 10.

The Hendersons claim that the new language conflicts with the terms of the City's noise ordinance, contradicts the stated purpose of the events code, and lacks the specificity contemplated elsewhere in the City code. *Id.* at 7-9. Allegedly, the new provision fails "to provide for any objective means by which the speaker can assess his compliance with the ordinance, but place[s] the merely subjective means only in the hands of hearers who are overtly hostile the Hendersons' message." *Id.* at 7. Consequently, they characterize the permit requirements as unconstitutionally vague, overbroad, arbitrary, and capricious. *Id.*

The Hendersons made multiple, unsuccessful efforts to persuade the City to remove the new provision from the permit. *Id.* at 9. Not satisfied with the City's response, when they filed a new permit application in September 2018, the Hendersons altered the application to add a caveat that they signed the application "subject to the US and Alabama Constitution and advice of counsel." *Id.* In turn, counsel for the City informed the Hendersons that the City would not grant the application with their added caveat. *Id.* Feeling that they had "no choice but to either accede to the new provision or face prosecution for protected expression," the Henderson's signed off on the new provisional language. *Id.* Subsequently, the Hendersons filed this lawsuit to challenge the defendants' alleged unconstitutional restriction of their right to free speech and to the free exercise of their religion. *Id.* at 10-11.

## III.   ANALYSIS

The City and Chief McMurray have moved to dismiss the lawsuit. They argue that the Hendersons fail to plead plausible claims for violations of the First Amendment rights to free speech and to free exercise of religion.[2] The court addresses the parties' various contentions below.

---

[2] Chief McMurray also asserts a qualified immunity defense. Docs. 9 at 2-3; 10 at 12-15. Because the court finds that the Hendersons do not assert plausible claims against Chief McMurray, the court does not address qualified immunity.

**A.**     <u>Whether the Hendersons Plausibly Plead that the City's</u>
        <u>Ordinance Violates Their First Amendment Right to Free Speech</u>

The Hendersons challenge the City's ordinance requiring them to obtain a permit for sound events, claiming that "the requirement of a permit under the circumstances . . . restrict[s] [their] right to free speech." Doc. 7 at 10. The Hendersons correctly note that a "public sidewalk is a quintessential public forum." Doc. 18 at 7. But, "even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Ward*, 491 U.S. at 791 (quoting *Clark*, 468 U.S. at 293). However, "even content-neutral time, place, and manner restrictions can be applied in such a manner as to stifle free expression." *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 322 (2002). Accordingly, to pass constitutional muster, regulations implementing a content-neutral permitting or licensing scheme "may not delegate overly broad licensing discretion to a government official." *Forsyth Cnty., Ga. v. Nationalist Movement*, 505 U.S. 123, 130 (1992) (citing *Freedman v. Maryland*, 380 U.S. 51 (1965)).

The challenged ordinance here provides that "[e]xcept for minor events, all organized events conducted on a public area shall be required to obtain a special

event permit."  Doc. 7 at 3, 54 (citing Huntsville, Ala., Mun. Code § 23-231(a)).

As justification for this requirement, the City cites the need "to provide for the safe

and orderly use of public property, for both First Amendment activity and activity

that is not protected by the First Amendment" and to "coordinate multiple uses of

limited space . . . ."  *Id.* at 8, 43 (citing Huntsville, Ala., Mun. Code § 23-201(a)).

On its face, the ordinance is content neutral—a fact the Hendersons concede.

*See* doc. 18 at 7.  More specifically, the ordinance is "'justified without reference

to the content of the regulated speech,'" *Ward*, 491 U.S. at 791 (quotation and

emphasis omitted), and it "'places no restrictions on either a particular viewpoint

or any subject matter that may be discussed,'" *Solantic, LLC*, 410 F.3d at 1259

(quoting *Hill*, 530 U.S. at 723) (alteration in original omitted).  Moreover, the

ordinance also serves the government's "strong interest in ensuring the public

safety and order, in promoting the free flow of traffic on public streets and

sidewalks."  *Madsen*, 512 U.S. at 768.  And, because the ordinance provides that

the City shall issue a permit for a special event unless certain specific and content-

neutral conditions exist, the ordinance leaves open ample channels for

communication and does not give City officials broad discretion over permitting

decisions.  *See* doc. 7 at 66-69 (citing Huntsville, Ala. Mun. Code § 23-237(b)).

At issue here is the Hendersons' contention that the City and Chief

McMurray apply this content-neutral ordinance in an unconstitutional way.  *See*

doc. 18 at 7.  In particular, the Hendersons argue in their brief that because the pro-choice protesters "always reserve the sidewalk in front of the [clinic], the Hendersons are forced to go to the other side of a busy street and [] communicate their message over heavy traffic," which "deprives them of ample alternative channels of communicating their message . . . ."  Doc. 18 at 7.  But, the Hendersons do not plead this contention in their complaint, nor do they allege that the City has ever denied them a permit to protest in front of the clinics.  *See* doc. 7.  A court's review on a motion to dismiss is limited to the allegations of the complaint,[3] and a plaintiff cannot amend a complaint through arguments in briefs.[4]  Moreover, the Hendersons' contention in their brief is belied by the permits the City issued to them, which reveal that the Hendersons obtained a permit for events on the public sidewalks in front of both clinics.  Doc. 7 at 15-21.[5]  In short, the Hendersons own pleading undermines their contention that they "are forced to go to the other side of a busy street and [] communicate their message . . . ."  Doc. 18 at 7.

---

[3] *See Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (citation omitted).

[4] *Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 535, 559 (11th Cir. 2013) (citation omitted).

[5] The court may consider the permits because they are attached to and cited in the Amended Complaint.  *See Financial Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997)).

The Hendersons also allege that the defendants have unconstitutionally applied the special events ordinance by adopting a policy of "allowing a group to obtain a permit for traditionally protected speech on a public sidewalk and thereby exclude other groups from the same sidewalk." Doc. 7 at 4. This contention is also unavailing. As stated above, the Hendersons do not allege in the Complaint that the defendants have ever denied them a permit. To the contrary, they allege that the City has renewed their permit every six months for several years. *See id.* Moreover, no voice has a monopoly in the public market place, and in that respect, the City recognizes and allows competing voices. To accommodate these varying voices and to minimize the impact on each group, the City ordinance providing that organized events on the same sidewalk "shall be conducted generally at least ten feet apart," *id.* at 4 (citing Huntsville, Ala. Mun. Code § 23-203(19)), is a reasonable restriction of limited public space.[6] And, critically, the Hendersons do not plead facts showing that the defendants have applied this space restriction in a discriminatory manner based on an event organizer's viewpoint. *See* doc. 7.

In summary, as the Hendersons concede, the challenged ordinance requiring a permit for organized sound events is a content-neutral reasonable restriction on the time, place, and manner of speech. Therefore, in the absence of any allegations

---

[6] As stated previously, one of the justifications the City provides for this restriction is the the need "to provide for the safe and orderly use of public property, for both First Amendment activity and activity that is not protected by the First Amendment" and to "coordinate multiple uses of limited space . . . ." *Id.* at 8, 43 (citing Huntsville, Ala., Mun. Code § 23-201(a)).

showing that the defendants apply the ordinance in an unconstitutional manner, the Hendersons have failed to plead a plausible claim for a violation of their right to free speech through the requirement that they obtain a special-events permit for sound events.

> **B.** **Whether the Hendersons' Plausibly Plead that the Permit's Noise Provision Violates Their First Amendment Right to Free Speech**

The Hendersons also challenge a provision in the special events permits issued to them that states that "[t]he amplified sound produced by a participant in the event shall not be plainly audible inside adjacent or nearby buildings." Doc. 7 at 6-10. In particular, the Hendersons claim that the provision is unconstitutionally vague and restricts their right to free speech by imposing an unreasonable, content-based restriction and by failing to leave ample alternative channels of communication. *Id.* at 10. For their part, the defendants contend that the provision is a content-neutral, reasonable time, manner, and place regulation, and the provision is sufficiently definite. *See* docs. 10 at 10-11; 11 at 3-4; 12 at 7-14.

> **1.** Whether the permit's noise provision is a content-neutral and reasonable time, manner, and place regulation on speech

On its face, the permit provision restricting the use of amplified sound does not make any content-based distinctions, but rather applies to all amplified sound.[7]

---

[7] In their Complaint, the Hendersons allege that "[t]he permit's requirements are not content neutral." Doc. 7 at 10. This conclusory allegation is not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 678.

*See* doc. 7 at 6-10. Nevertheless, the Hendersons contend that the defendants apply this content-neutral provision in an unconstitutional, content-based manner by purportedly enforcing the noise provision against them, but not against the pro-choice protesters. Doc. 18 at 6. Again, however, the Hendersons' complaint does not bear out that contention. Indeed, the Amended Complaint is devoid of allegations suggesting that the defendants impose or enforce the permit's noise restriction on the basis of any particular viewpoint, or that the defendants have failed to enforce the restriction against the pro-choice protesters. *See* doc. 7. Rather, as to the pro-choice protestors, the Hendersons plead only that these protestors "employ loud shouting and even the ringing of cowbells to drown out [the Hendersons'] message." *Id.* at 4.[8] Such a contention is not akin to a claim that the defendants allow these protesters to violate the restriction on amplified sound because, by themselves, loud shouting and ringing cowbells are not equivalent to amplified sound. Thus, the Hendersons have failed to plausibly plead

---

[8] To the extent that the Hendersons claim that the pro-choice protesters interfere with the exercise of their right to free speech, the Hendersons do not plausibly plead that the defendants are liable for those protesters' actions. *See* doc. 7. Rather, the Hendersons allege that "[t]he defendants fail to protect the Hendersons from [the pro-choice protesters'] thuggery," i.e., the loud shouting and ringing of cow bells, even though those actions allegedly violate the Huntsville ordinance providing that "[n]o person, including participants in another organized event, shall unreasonably hamper, obstruct, impede, or interfere with an organized event or with any person . . . participating . . . in the event." *Id.* at 4 (quoting Huntsville, Ala. Mun. Code § 23-204(a)). The defendants argue that the Eleventh Circuit has not recognized a "failure to protect" theory for First Amendment liability, *see* doc. 10 at 9-10, and the Hendersons do not address that argument or present any authority to support their "failure to protect" theory of liability, doc. 18.

that the permit's noise restriction is content based or that the defendants apply the restriction in a content-based manner to discriminate against their viewpoint.

Still, even when a noise restriction is content neutral, "it still must be 'narrowly tailored to serve a significant governmental interest.'" *McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (quoting *Ward*, 491 U.S. at 796). This entails that the noise restriction "must not 'burden substantially more speech than is necessary to further the government's legitimate interests;'" however, it "'need not be the least restrictive or least intrusive means of' serving" those interests. *Id.* (quoting *Ward*, 491 U.S. at 799). Based on the Hendersons' pleadings, the permit's noise provision is narrowly tailored to serve a significant government interest.

To begin, the imposition of the noise provision is consistent with the purpose of the special events ordinance by "address[ing] secondary harms," such as "unreasonable inconvenience, interference, demand, or annoyance, to or on adjacent or nearby uses . . . ." Doc. 7 at 43, 48 (citing Huntsville, Ala. Mun. Code §§ 23-201; 23-201(a)). In that regard, the permit's noise provision serves the City's "'substantial interest in protecting its citizens from unwelcome noise,'" *Ward*, 491 U.S. at 796 (quotation and alteration in original omitted), and the City's interest in "ensur[ing] the health and well-being of the patients at the clinic[s]" by protecting them from "the cacophony of political protests," *Madsen*, 512 U.S. at

772-73 (citing *NLRB v. Baptist Hospital, Inc.*, 442 U.S. 773, 783 (1979)). And, by placing no restrictions on unamplified sound or visual means of communication, and allowing amplified sound that is not plainly audible inside adjacent or nearby buildings, the noise provision does not burden substantially more speech than necessary to further the City's stated interests. *See Pine*, 762 F.3d at 1273-74. In fact, the provision is generally less restrictive than the noise restriction the Supreme Court approved in *Madsen*, which restrained "singing, chanting, whistling, shouting, yelling, use of bullhorns, auto horns, sound amplification equipment or other sounds . . . within earshot of the patients inside the clinic during the hours of 7:30 a.m. through noon on Mondays through Saturdays." 512 U.S. at 772 (internal quotation marks and alteration omitted).

Finally, to be a constitutional time, manner, and place restriction on speech, the noise provision also must leave open ample alternative channels of communication. *See Ward*, 491 U.S. at 791; *Pine* 762 F.3d at 1268. Here, the permit's noise provision "in no way restricts the use or display of signs or the distribution of literature, thereby providing reasonable modes of communication." *Pine*, 762 F.3d at 1274-75. The Hendersons resist that conclusion by arguing that holding signs "is not an ample alternative channel of communication," and contending that they need to be able to "shout or use amplification in order to be heard" by women entering the clinics. Doc. 18 at 5. This contention overlooks

that the permit's noise provision does not prevent the Hendersons from shouting or using other forms of unamplified sound, and it does not restrict the use of amplified sound provided it is not plainly audible inside adjacent or nearby buildings. Doc. 7 at 19-20. Consequently, the Hendersons cannot show that the provision fails to provide ample alternative channels of communication. *See Medlin v. Palmer*, 874 F.2d 1085, 1090 (5th Cir. 1989) (finding that an ordinance that prohibits the use of amplified sound within 150 feet of a hospital or health clinic "falls way short of precluding alternative avenues of communication").

    2.    <u>Whether the permit's noise provision is unconstitutionally vague</u>

Laws regulating a person's behavior "must give fair notice of conduct that is forbidden or required," and the Fifth Amendment's Due Process Clause "requires the invalidation of laws that are impermissibly vague." *Fed. Commc'ns Comm'n v. Fox TV Stations, Inc.*, 567 U.S. 239, 253 (2012) (citations omitted). "[T]he void for vagueness doctrine addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way. . . . When speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *Id.* (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972)).

The Hendersons allege that the noise provision at issue here[9] is unconstitutionally vague because it "fail[s] to provide for any objective means by which the speaker can assess his compliance with the ordinance" and "place[s] the merely subjective means only in the hands of hearers who are overtly hostile to the Hendersons' message." Doc. 7 at 7. And, because they "have no way of knowing whether they can be heard inside the clinic or not," the Hendersons contend they cannot know whether their speech will violate the noise provision. Doc. 18 at 4-5. Laws do not have to set specific, objective standards that provide mathematical certainty, however, to withstand constitutional scrutiny. *See Grayned*, 408 U.S. at 110. For example, in *Pine v. City of West Palm Beach, Fla.*, the Eleventh Circuit found that a city ordinance banning "amplified sound that is loud or raucous, or that unreasonably disturbs, injures, or endangers the comfort, repose, health, peace or safety of others within a health care facility quiet zone, is not impermissibly vague." 762 F.3d at 1276 (citing *Reeves v. McConn*, 631 F.2d 377, 386 (5th Cir. 1980)). And, in *Grayned*, the Supreme Court approved a municipal "antinoise" ordinance stating that "[n]o person, while on public or private grounds adjacent to any building in which a school or any class thereof is in session, shall willfully make or assist in the making of any noise or diversion which disturbs or tends to

---

[9] The noise provision forbids parties from producing amplified sound that is "plainly audible inside adjacent or nearby buildings," and provides that "[t]he amplified sound is plainly audible if [it] can be clearly heard inside an adjacent or nearby building by a person using his normal hearing faculties, provided that the person's hearing is not enhanced by any mechanical device, such as a microphone or hearing aid." Doc. 7 at 19.

disturb the peace or good order of such school session or class thereof." 408 U.S. at 107-08 (quotation omitted). The Court found that, even though "the prohibited quantum of disturbance is not specified in the ordinance," the ordinance was not vague because "the prohibited disturbances are easily measured by their impact on the normal activities of the school." *Id.* at 112.

Like the ordinances in *Pine* and *Grayned*, the language of the noise provision in this case is "marked by 'flexibility and reasonable breadth, rather than meticulous specificity,' . . . but . . . it is clear what the [provision] as a whole prohibits." *Grayned*, 408 U.S. at 110 (quotation omitted). The ordinance "gives a person of ordinary intelligence fair notice of what type of amplified sound is restricted." *Pine*, 762 F.3d at 1276. Moreover, the amplified sound prohibited by the provision can easily be determined by ascertaining whether it is plainly audible in adjacent buildings. Therefore, the noise provision is not unconstitutionally vague.

In conclusion, the permit's noise provision is a content-neutral, reasonable time, manner, and place regulation on speech, and it is not unconstitutionally vague. And, because the Hendersons did not plead facts showing that the defendants have imposed or enforced the noise provision in an unconstitutional manner, they have failed to plausibly plead that the imposition or enforcement of the noise provision violates their First Amendment right to free speech.

**C.** **Whether the Hendersons Plausibly Plead that the Defendants Infringe on Their First Amendment Free Exercise Rights**

The court turns next to the Hendersons' First Amendment right to the free exercise of religion claim. The Hendersons cite the City's special events ordinance and the imposition of the noise restriction in the permits the City issued them as unreasonable restrictions to their freedom of religious expression. Doc. 7 at 11. "[T]he right of free exercise does not relieve an individual of the obligation to comply with a 'valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion prescribes (or proscribes).'" *Emp't Div., Dept. of Human Res. of Oregon*, 494 U.S. at 879 (quotation omitted). Thus, "[t]he threshold questions in analyzing a law challenged under the Free Exercise Clause are (1) is the law neutral, and (2) is the law of general applicability." *Keeton v. Anderson-Wiley*, 664 F.3d 865, 879 (2011) (quoting *First Assembly of God of Naples, Florida, Inc. v. Collier Cnty., Fla.*. 20 F.3d 419, 423 (11th Cir. 1994)). "'A law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice.'" *Id.* at 880 (quoting *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993)). Rather, such a law "needs only to survive rational basis review . . . , under which it is presumed constitutional and the burden is on the plaintiff to prove that it is not rationally related to a legitimate government interest." *Id.* at 880 (citing *Combs v.*

*Homer-Center School Dist.*, 540 F.3d 231, 242-43 (3rd Cir. 2008) and *Deen v.*
*Egleston*, 597 F.3d 1223, 1230-31 (11th Cir. 2010)).

The Hendersons, however, claim that their free exercise claims are entitled
to a higher level of review under the "hybrid rights" doctrine of *Employment*
*Division, Department of Human Resources of Oregon v. Smith*. Docs. 7 at 12; 18
at 8. In *Smith*, the Supreme Court noted that "[t]he only decisions in which we
have held that the First Amendment bars application of a neutral, generally
applicable law to religiously motivated action have involved not the Free Exercise
Clause alone, but the Free Exercise Clause in conjunction with other constitutional
protections, such as freedom of speech," thereby implying that such "hybrid
situations" could merit a higher standard of review. 494 U.S. at 881. The
Hendersons contend they present such a "hybrid situation" because their
religiously motivated conduct is protected by both the Free Exercise Clause and
Free Speech Clause, and, therefore, their claims are subject to strict scrutiny
review. Docs. 7 at 12; 18 at 8-9. The case law does not support this contention.

To begin, the Supreme Court recognized that the free exercise claim in *Smith*
"does not present [] a hybrid situation . . . ," 494 U.S. at 882, and, thus, "*Smith's*
'language relating to hybrid claims is dicta and not binding on this court,'"
*Leebaert v. Harrington*, 332 F.3 134, 143 (2nd Cir. 2003) (quotation omitted).
Second, neither the Eleventh Circuit nor the Supreme Court have applied the

"hybrid rights" doctrine to free exercise claims that implicate the Free Exercise Clause in conjunction with other constitutional rights. *See Chabad of Nova, Inc., v. City of Cooper City*, 575 F. Supp. 2d 1280, 1297 (S.D. Fla. 2008) ("The Eleventh Circuit has not recognized the existence of such a hybrid claim . . . .). In fact, in *Keeton v. Anderson-Wiley*, the Eleventh Circuit concluded that rational basis review applies to a free exercise claim even though the claim also implicated the plaintiff's right to free speech. *See* 664 F.3d at 879-80.[10] Therefore, based on this precedent, the Hendersons' free exercise claims are subject to rational basis review if the ordinance and noise provision are neutral laws of general applicability.

Turning now to the merits, the defendants argue that the City's special events ordinance and the permit's noise provision are neutral laws of general applicability that are rationally related to a legitimate government purpose. Doc. 12 at 14-16. Indeed, as discussed above, the ordinance and noise provision are content neutral on their face, *see* p. 9, 12-13, *supra*, and nothing in the ordinance or

---

[10] In *Keeton*, the plaintiff, a graduate student enrolled in a counseling program, claimed that her college violated her First Amendment free speech and free exercise rights by requiring her to, among other things, comply with the American Counseling Association's Code of Ethics, which provide in relevant part that "[c]ounselors do not condone or engage in discrimination based on . . . gender identity [or] sexual orientation." 664 F.3d at 867, 869. Thus, the plaintiff's free exercise claim implicated her right to free speech. Even so, in analyzing whether the plaintiff was likely to prevail on the claim, the Eleventh Circuit did not address the "hybrid rights" doctrine. Instead, the Court found that the defendants' requirement that students comply with the ACA's Code of Ethics was a neutral and generally applicable policy, and, therefore, "it needs only to survive rational basis review." *Id.* at 880.

provision indicates that their purpose "'is to infringe upon or restrict practices because of their religious motivation,'" *Keeton*, 664 F.3d at 879 (quoting *Church of the Lukumi Babalu Aye*, 508 U.S. at 531). Moreover, the Hendersons do not allege any facts to suggest that a purpose of the ordinance and noise provision is to infringe upon religiously motivated actions. *See* doc. 7. Likewise, the Hendersons do not plead facts suggesting that the defendants have selectively imposed or enforced the ordinance and provision to burden conduct motivated by religious beliefs. *See id.* Finally, the Hendersons' allegations and the permits issued to them show that the Hendersons are free to exercise their religious beliefs by gathering on the sidewalks in front of the clinics to peacefully pray and communicate their message to others through, among other things, unamplified sounds and amplified sounds that are not plainly audible in adjacent or nearby buildings.

Thus, the ordinance and noise provision are neutral laws of general applicability. *See Keeton*, 664 F.3d at 879-80 (quoting *Church of the Lukumi Babalu Aye*, 508 U.S. at 531). And, as discussed above, the ordinance and noise provision are rationally related to the City's significant interests in ensuring public safety and order, protecting citizens from unwelcome noise, and protecting the health and well-being of patients at the clinics. *See* pp. 9, 14, *supra*. Consequently, the Hendersons fail to plausibly plead that the defendants violate

their free exercise of religion rights by enforcing the ordinance and including the noise restriction in the Hendersons' special events permits.

## IV.    CONCLUSION

To close, the Hendersons fail to plead plausible claims against the City of Huntsville and Chief McMurray for alleged violations of their First Amendment rights to free speech and to free exercise of religion.  As a result, the defendants' motions to dismiss, docs. 9 and 11, are due to be granted.  A separate order will be issued.

**DONE** the 4th day of February, 2020.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE